UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:17-CV-00069-TBR

MONYAL D. SMITH                                                                                    PLAINTIFF

v.

FULTON COUNTY DETENTION CENTER,
CARRIE POWELL, JEFF JOHNSON, BRITTANY WALSH,
And WILL JACKSON.                                                                                  DEFENDANTS

## MEMORANDUM OPINION

This matter comes before the Court upon Defendants, Carrie Powell's, Jeff Johnson's, and Brittany Walsh's, Motion for Summary Judgement, (R. 28). Despite the Court warning *pro se* Plaintiff and inmate Monyal D. Smith of the potential consequences, (R. 30), he has failed to respond. Also pending before the Court is Smith's Motion to Appoint Counsel. (R. 31). These matters are now ripe for adjudication. For the reasons that follow, the Court HEREBY DENIES Smith's Motion to Appoint Counsel, (R. 31), and GRANTS the Defendants' Motion for Summary Judgment, (R. 28).

BACKGROUND

On November 4, 2016, Monyal D. Smith was booked into the Fulton County Detention Center. (R. 29, Smith Depo. p. 41). He was placed in Cell 121. (*Id.* at p. 46). While in Cell 121 on the fourth, Smith reported to Deputy Jailer Jamie Alexander that another inmate had threatened him with a knife. (*Id.* at p. 15). The other inmate's name was later identified as Davenport. Accordingly, Alexander transferred Smith from Cell 121 to Cell 105. (*Id.*). Smith also claims that Alexander told him "he had put a keep-away on us, something like a conflict." (*Id.* at p. 53). Although never fully explained, the Court understands a "keep-away" to be a sort

of note made in Fulton County Detention Center records that would notify Fulton County employees that Smith and Davenport were to remain separated.

On November 24, 2016, Smith was again booked into Fulton County Detention Center and placed in Cell 105. (*Id.* at p. 64). He was released a few days later without incident. (*Id.*).

On February 8, 2017 Smith was booked into Fulton County Detention Center for a third time by Deputy Jailer Terry Hutcherson. (*Id.* at pp. 65, 67). Smith did not mention the incident with Davenport to Hutcherson. (*Id.*). Hutcherson placed Smith in Cell 121. (Id.). Shortly after Smith was placed in Cell 121, he was allegedly attacked with a "sharpened utensil" by Davenport. (Id. at pp. 67-72). Other inmates in Cell 121 alerted Fulton County Detention Center staff that Smith and Davenport were fighting. (Id. at p. 71). Corrections Officer William Jackson was the first to respond and called for Corrections Officer Brittany Walsh to assist him. (*Id.*). Jackson instructed Davenport to separate from Smith. (Id. at pp. 62-63, 157-58). Davenport complied. (Id. at p. 158). Smith was then taken out of Cell 121 and brought to the Fulton County Detention Center medical facility. (Id. at p. 71).

Between February 8, 2017 and February 12, 2017, Smith filed an inmate memorandum addressed to Defendant Jeff Johnson stating that Smith was going to file a lawsuit concerning the incident on the eighth. (R. Ex. C). Again, on March 21, 2017, Smith wrote a letter to Johnson regarding the incident (R. 28, Ex. D). Johnson responded, instructing Smith that he needed to exhaust the grievance procedure prior to filing suit. (Id.). Smith admits that he failed to do so. (R. 29, Smith Depo., pp. 164-165). He claims that he attempted to, but the electronic grievance kiosk at Fulton County Detention Center was broken. (R. 29, Smith Depo., p. 122). Other than trying to use the electronic kiosk, Smith admits he made no other effort to file a grievance or exhaust his administrative remedies prior to filing suit. (Id. at pp. 120-122, 164-165).

Instead, on April 27, 2017, Smith filed sit against Fulton County Detention Center, Acting Jailer Carrie Powell, Chief Deputy Officer Jeff Johnson, Corrections Officer Brittany Walsh, and Corrections Officer William Jackson. (R. 1). He claims that the security cameras in Cell 121 were not functioning and that all the Defendants failed to honor the "keep-away." (R. 1). After the Court's initial review, claims remain pending against Carrie Powell, Jeff Johnson, Brittany Walsh, and William Jackson in their individual capacities for failure-to-protect pursuant to the Eighth Amendment. (R. 14). To date, William Jackson has not been served. (R. 20). Defendants Powell, Johnson, and Walsh now move for summary judgment. The Court has warned Smith about the potential consequences of failing to respond to the Defendants' Motion for Summary Judgment. Despite this warning, Smith has not responded.

STANDARD

DISCUSSION

    I.    Smith's Motion to Appoint Counsel

Smith has asked the Court to appoint him counsel. (R. 31). Pursuant to 28 U.S.C. § 1915(e)(1), in proceedings in forma pauperis, "[t]he court may request an attorney to represent any person unable to afford counsel." Importantly though, "[t]he appointment of counsel in a civil proceeding is not a constitutional right and is justified only in exceptional circumstances." *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003) (emphasis added). When considering whether such "exceptional circumstances exist, courts typically consider 'the type of case and the ability of the plaintiff to represent himself.'" *Id.* (quoting *Archie v. Christian*, 812 F.2d 250, 253 (5th Cir. 1987) and *Poindexter v. Federal Bureau of Investigation*, 737 F.2d 1173, 1185, 238

U.S. App. D.C. 26 (D.C. Cir. 1984)). "This generally involves a determination of the 'complexity of the factual and legal issues involved.'" *Lavado v. Keohane*, 992 F.2d 601, 606 (6th Cir. 1993) (quoting *Cookish v. Cunningham*, 787 F.2d 1, 3 (1st Cir. 1986)).

Here, Smith's sole reason for requesting counsel be appointed is "because the Courts is trying to dismiss [his] case." (R. 31). This does not qualify as exceptional circumstance. Furthermore, the Court finds that issues here are relatively straightforward. Thus, the Court sees no need to appoint counsel. Smith's Motion is denied.

II. The Defendants' Motion for Summary Judgment

The Defendants argue that they are entitled to summary judgment for three reasons. First, Smith failed to exhaust his administrative remedies. Second, Smith has failed to provide any evidence that the Defendants "perceived facts from which to infer a substantial risk of harm befalling [Smith]." Third, the Defendants are entitled to qualified immunity. As previously noted, Smith offers no response. The Court will address each argument in turn.

A. Failure to Exhaust Administrative Remedies.

The Defendants' argument that Smith failed to exhaust his administrative remedies is simple and straight-forward. Smith failed to file a grievance prior to filing suit. Smith admits as much. Therefore, according to the Defendants, smith failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA). However, based on the evidence before it, the Court finds that Smith's failure to exhaust is as clear-cut as the Defendants' Motion for Summary Judgment makes it out to be.

The PLRA require that a prisoner must exhaust all available administrative remedies before he or she may bring a federal action related to prison conditions. 42. U.S.C. § 1997e(a) (2013). The requirement "applies to all inmate suits about prison life, whether they involve

general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002); *accord Freeman v. Francis*, 196 F.3d 641, 644 (6th Cir. 1999). To properly exhaust administrative remedies, the prisoner must comply with the deadlines and procedures of the specific prison involved. *Jones v. Bock*, 549 U.S. 199, 218, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007); *accord Lee v. Wiley*, 789 F.3d 673, 677 (6th Cir. 2015). Under the PLRA, the prisoner's failure to exhaust available, administrative remedies prior to filing suit is an affirmative defense, and, therefore, the defendants bear the burden of proof on exhaustion. *See Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012) (citing *Bock*, 549 U.S. at 216); *Napier v. Laurel Cty.*, 636 F.3d 218, 225 (6th Cir. 2011).

Here, there is no doubt that Smith failed to exhaust his administrative remedies prior to filing suit. Despite the Defendants' failure to provide the Court with Fulton County Detention Center's grievance procedure, the Court finds it clear form the Record that Fulton County Detention Center indeed had a grievance procedure and that, at a minimum, the procedure required Smith to file a grievance prior to filing suit. (*See* R. 28, Ex. D (Defendant Jeff Johnson notifying Smith that he needed to exhaust the grievance procedure prior to filing in federal court); *See* R. 29, Smith Depo., pp. 119-123 (Smith acknowledging that he was told that he need to utilize the grievance procedure)). Smith admits to not filing a grievance prior to filing the instant lawsuit, (R. 29, Smith Depo., pp. 164-65). Thus, he indisputably failed to exhaust his administrative remedies.

However, contrary to the Defendants' suggestion, the fact that Smith failed to exhaust his administrative remedies prior to filing suit does not end the Court's inquiry. "Under §1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of the administrative remedies: An

inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). Here, Smith claims that he tried to file a grievance prior to filing suit but that the electronic grievance kiosk was broken. (R. 29, Smith Depo., p. 120). Thus, the real question is: under these circumstance, should Smith be excused from exhausting his administrative remedies?

Based on Sixth Circuit case law, the answer to this question is no. the Sixth Circuit requires an inmate to demonstrate affirmative efforts to comply with administrative procedures before claiming that he is excused from exhausting those procedures due to their unavailability. *Napier*, 636 F.3d at 223. Furthermore, this Court and the Sixth Circuit have repeatedly held that requesting a grievance form from prison officials and being denied does not excuse an inmate's failure to exhaust. *See Lyle v. Jackson*, 49 F. App'x 492 (6th Cir. 2002); *Martin v. Johnson*, 72 F. App'x 256, 257-58 (6th Cir. 2003) (holding that a prisoner's allegation that he requested a grievance form but did not receive on is insufficient to establish exhaustion); *Anderson v. Meeks*, 79 F. App'x 113, 114 (6th Cir. 2003) (citing *Jones v. Smith*, 266 F. 3d 399 (6th Cir. 2001) (holding that it is insufficient to claim grievance forms were denied to excuse exhaustion and that prisoner must attempt to file a grievance without a form)); *Jones v. Smith*, 266 F. 3d at 400 (holding that an inmate failed to exhaust administrative remedies when he did not make another attempt to obtain a grievance form after his correction counselor declined his request); *Ratliff v. De Baun*, No. 5:15-CV-155-TBR, 2017 U.S. Dist. LEXIS 160426, at *11 (W.D. Ky. Sep. 28, 2017) ("Therefore, the Court finds that [the inmate] asking [the prison official] for a grievance form multiple times was not sufficient to exhaust the administrative remedies that were available to him.").

Here, the Court finds the electronic grievance kiosk being broken to be an even more inadequate excuse than if Smith had requested and grievance for from a prison official and been denied. Walking up to a grievance kiosk, realizing it is broken, and then taking no other action, as Smith has admitted to doing here, implies even less affirmative effort than requesting a grievance form from a prison official. What Smith did is no different than if the grievance forms at Fulton County Detention Center could normally be found on a table-top, and Smith walked up to the table, realized no grievance forms were there, and walked away with no further action, only later to claim that he failed to exhaust his administrative remedies because they were unavailable to him. Had Smith taken further action upon realizing the electronic grievance kiosk was broken, such as asking a prison official what to do, trying to file a paper grievance, *anything*, the Court's decision might be different. But given these circumstances and Smith's lack of affirmative effort, the Court finds that Smith failed to exhaust his administrative remedies and that those remedies were not make unavailable to him simply because the electronic grievance kiosk happened to be broken. There is no need to proceed to the merits. The Defendants' Motion for Summary Judgment is granted.

Furthermore, although he has never been served, the Court finds that Defendant Will Jackson would also be entitled to summary judgment based on the Court's conclusion above. Accordingly, in the interest of justice and judicial economy, the Court dismisses with prejudice Smith's claims against Jackson. The Court will enter a separate Order and Judgment consistent with this Memorandum Opinion.

CONCLUSION

For the reasons stated herein, Defendants, Carrie Powell's, Jeff Johnson's, and Brittany Walsh's, Motion for Summary Judgement, (R. 28), is Granted, and in the interest of justice and judicial economy, any and all claims against Defendant Will Jackson are dismissed with prejudice. The Court

**Thomas B. Russell, Senior Judge**
**United States District Court**
July 25, 2019

cc: Monyal D. Smith
159403
LEE ADJUSTMENT CENTER
Inmate Mail
168 Lee Adjustment Center Drive
Beattyville, KY 41311
PRO SE